O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CLYDE L. JAMES,                                    CASE NO. ED CV 13-01291 RZ
                              Plaintiff,
                                                   MEMORANDUM OPINION
              vs.                                  AND ORDER

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Plaintiff Clyde James asserts that the Social Security Commissioner committed three errors in denying his application for disability benefits, each of which, he asserts, entitles him to reversal.

First, Plaintiff asserts that the Commissioner's delegate, the Administrative Law Judge, wrongly declined to credit the opinion of two of Plaintiff's treating physicians, Dr. Potyondy and Dr. Amin. A treating physician's opinion of course is entitled to deference, *Aukland v. Massanari*, 257 F.3d 1033, 1036 (9th Cir. 2001), but the Administrative Law Judge is not required to accept it. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The Administrative Law Judge did not accept Dr. Potyondy's opinion of Plaintiff's residual functional capacity. He offered a variety of reasons [AR 28], but the Court need mention only one — that the opinion addressed restrictions only for a six month

period, whereas Social Security law requires that a claimant be unable to work for a period of twelve months or longer.  [*Id*.]  Plaintiff disagrees with some of the Administrative Law Judge's interpretation of other evidence, but does not deny that this opinion only expressed restrictions for a six month period.  That alone was sufficient to justify the Administrative Law Judge's decision not to rely on it.

The Administrative Law Judge also rejected the opinion of Dr. Amin. Dr. Amin filled out a questionnaire; as the Administrative Law Judge noted, however, Dr. Amin appeared to have seen Plaintiff only once, which made it problematic as to how much weight to ascribe to Dr. Amin's assessment, since he may well not be considered a "treating" physician.  *See* 20 C.F.R. § 404.1527(d)(2).  Certainly, his opinion was not to be considered as controlling, as the Administrative Law Judge noted.  The Administrative Law Judge gave several valid reasons for not crediting the limitations suggested by Dr. Amin, many of which Plaintiff does not contest.  For example, the Administrative Law Judge noted that the treatment notes do not indicate that Plaintiff complained of side effects of treatment to the extent indicated by Dr. Amin, nor is there any indication of depression or anxiety, contrary to Dr. Amin's statements.  The Administrative Law Judge also noted that, contrary to Dr. Amin's statements that Plaintiff could not work, Plaintiff himself wanted to return to work; elsewhere in the decision, the Administrative Law Judge noted that another treating physician had said that Plaintiff could work, and that Plaintiff acknowledged this.  [AR 25]  The fact that, as Plaintiff states, his work could not accommodate him, does not gainsay the fact that he was *capable* of work.

Plaintiff's second argument is that the Administrative Law Judge wrongly determined that Plaintiff could perform his past relevant work, because the work was inconsistent with the job description of the work found in the Labor Department's DICTIONARY OF OCCUPATIONAL TITLES.  Plaintiff argues that, despite the Administrative Law Judge's having asked the vocational expert if his testimony was consistent with the DICTIONARY, and despite the vocational expert's having testified that it was, that the testimony really wasn't consistent with the DICTIONARY because a person performing the

job as described in the DICTIONARY could not use a cane as often as the hypothetical question to the vocational expert assumed.

This may or may not be a good argument in a different case, but it is not pertinent to the present case.  While the Administrative Law Judge did find that the vocational expert's testimony was consistent with the DICTIONARY, his specific finding was not that Plaintiff could perform the work as it had been generally performed, but rather that Plaintiff retained the capacity to perform his prior work as it had *actually* been performed:

> The testimony of the vocational expert is consistent with the DOT, and the undersigned accepts it (SSR 00-4p).  In comparing the claimant's residual functional capacity with the physical and mental demands of the claimant's past relevant work, the undersigned has determined the claimant is able to perform this past relevant work as actually performed based on the testimony of the vocational expert.  Specifically, the claimant can perform the work of production supervisor but not that of maintenance supervisor.

[AR 29]

A person can perform his past relevant work if he can do the job either as actually performed or as performed  generally in the economy.  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).  When the focus is on the past relevant work as actually performed, the sources for the Administrative Law Judge to consult are the testimony of a vocational expert or the testimony of the applicant, or both.  *Id*.  On the other hand, the DICTIONARY is an important tool to consult when the Administrative Law Judge determines that the claimant can perform his past relevant work as it is generally performed in the economy.  As the *Pinto* court said:

- 3 -

> Turning to the question of Pinto's past relevant work as generally performed, we begin by observing that the best source for how a job is generally performed is usually the Dictionary of Occupational Titles.

*Id*. at 845-46 (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995), 20 C.F.R. §§ 404.1566(d) and 416.966(d), and Soc. Sec. Rul. No. 82–61.)  It is in this context of assessing how a job is generally performed that the obligation exists to adduce persuasive testimony justifying a deviation from the DICTIONARY.  *Id*.  The DICTIONARY, by definition, does not indicate how a job might actually have been performed, and therefore an inconsistency with the DICTIONARY is not probative on whether the Plaintiff could perform his past relevant work as that job actually was performed.

In addition, Plaintiff's argument focuses on the inconsistency between using a cane and fingering or handling.  These tasks, however, were said to involve computer work, which was not involved as a factual matter while Plaintiff was on the floor supervising.  Thus, even if Plaintiff had challenged the finding that the Administrative Law Judge *did* make — that he could perform his work as actually performed — the record contains no indication of error by the Administrative Law Judge.

Plaintiff's third argument is that the Commissioner should have incorporated into the record evidence that Plaintiff submitted after the administrative hearing.  Plaintiff submits with his memorandum to this Court an unauthenticated collection of papers (not classified in the same way as Plaintiff refers to them in his memorandum) which are, he says, the exhibits he submitted to the Appeals Council and which the Appeals Council wrongly rejected.  The first two of those pages clearly pertain to matters occurring later than the period at issue during the Administrative hearing.  One is an "After Visit Summary" of a doctor's visit on July 23, 2012; the other is a "Work Status Report" which states that the date of the onset of the condition was May 21, 2012.  Neither of these

documents would have been properly considered by the Appeals Council on the present application for benefits.

The third document, entitled "Multiple Impairment Questionnaire," probably should have been included in the Administrative Record, because it purports to refer, at least in part, to a time period covered by the administrative hearing.  But the failure to include it was harmless error.  The record refers to a first treatment of Plaintiff by a colleague of the doctor who filled out the questionnaire, with treatment every one-two years thereafter; it is unclear whether this periodic treatment was with the colleague or with the subscriber to the questionnaire, Dr. Chen, but since Plaintiff points to no treatment records of Dr. Chen, it appears to refer to other doctors whose records *are* contained in the Administrative Record, and which the Administrative Law Judge did review.  References to an MRI in 2010, for example, were already in the record and referred to by the Administrative Law Judge.  [AR 23]  Much of the balance of the questionnaire seems to refer to an examination conducted on April 19, 2012, presumably by Dr. Chen, and addresses Plaintiff's condition at that time, not at the earlier time covered by the administrative hearing. The ultimate assessment, in any event, was not materially different from that addressed by the Administrative Law Judge.  In short, including the record in the Administrative Record would have changed nothing, and at worst the Commissioner committed harmless error by not including it.

The Court thus finds that none of the three arguments advanced by Plaintiff justifies reversal or remand of this action.  Accordingly, the decision of the Commissioner is affirmed.


DATED:  May 27, 2014

_____
RALPH ZAREFSKY
UNITED STATES MAGISTRATE JUDGE